UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DEVON COOPER, | Case No. 3:20-cv-00395-LRH-CSD |
| Petitioner, | **ORDER** |
| v. | |
| WILLIAM GITTERE, et al., | |
| Respondents. | |

I. **Introduction**

This is a habeas corpus matter under 28 U.S.C. § 2254. Currently before the court is the petition of Devon Cooper and respondents' answer. ECF No. 7, 22. The court finds that Cooper is not entitled to relief, and the court denies his petition.

II. **Procedural History**

Cooper was a defendant in four criminal cases in the Eighth Judicial District Court of the State of Nevada, Case Nos. C278067, C281169, C281312, and C281170, which is the instant case. Three attorneys represented Cooper in the four cases. Two global plea offers, one which failed and one which Cooper accepted, were at issue.

On December 19, 2011, in Case No. C278067, Cooper agreed to plead guilty to one count of possession of a stolen vehicle. He also agreed to be treated as a "small" habitual criminal under Nev. Rev. Stat. § 207.010(1)(a). Other criminal cases then pending in the justice court

would be dismissed. The stipulated prison would have been a minimum term of 5 years and a maximum term of 12 1/2 years. However, the stipulated prison sentence would have a minimum term of 8 years and a maximum term of 20 years if Cooper failed to appear at sentencing or failed to stay out of trouble. Ex. 6 (ECF No. 9-6). At all times relevant to this action, Jonathan Powell represented Cooper in Case No. C278067.

Cooper did not stay out of trouble. In May 2012, the grand jury indicted him in the three other cases, Case Nos. C281169, C281312, and C281170. Exs. 8, 10, 12 (ECF No. 9-8, 9-10, 9-12). Claudia Romney initially represented Cooper in the criminal case at issue in this action, C281170.[1]

On February 27, 2013, Cooper filed a proper-person motion to withdraw his guilty plea in Case No. C278067. Ex. 23 (ECF No. 9-23). On March 13, 2013, the prosecutor emailed the attorneys in all four cases with a global plea offer. Ex. 131 (ECF No. 11-46). The offer had four steps. First, Cooper would need to not move to withdraw his plea in C278067 and agree to be sentenced according to the guilty plea agreement in that case, a stipulated sentence of 8-20 years. Second, Cooper would need to plead guilty to robbery with the use of a deadly weapon in C281169 and stipulate to being treated as a "large" habitual criminal under Nev. Rev. Stat. § 207.010(1)(b). The stipulated sentence would be 25 years' imprisonment with eligibility for parole beginning after a minimum of 10 years, to run concurrently with the sentence in C278067. Third, Cooper would need to plead guilty to possession of a stolen vehicle, battery with a deadly weapon, and felony evading in C281170.[2] Cooper would need to stipulate to "large" habitual-criminal treatment and the same sentence as in the second step. The sentence would run concurrently with the sentences in C278067 and C281169. Fourth, the prosecution would dismiss C281312. The prosecutor gave Cooper until 9:30 a.m. on March 25, 2013, to accept the offer. Ex. 131 (ECF No. 11-46).

At a hearing on March 25, 2013, the prosecutor stated for the record that she had made that global plea offer. Ex. 25 at 4-5 (ECF No. 9-25 at 5-6). She extended the deadline until 5:00

---

[1] Romney also represented Cooper in Case No. C281169, and Scott Eichhorn represented Cooper in Case No. C281312.

[2] The prosecutor labeled this step also as step two. The prosecutor also used the incorrect case number.

2

p.m. on March 26, 2013, so that all three of Cooper's attorneys had the opportunity to speak with Cooper. Id. at 5 (ECF No. 9-25 at 6). At the next hearing, on March 27, 2013, Powell stated that Cooper would not move to withdraw his plea in Case No. C278067. Ex. 26 at 2 (ECF No. 9-26 at 3). Powell also stated that Cooper did not want to accept the global plea offer because he did not feel like he had enough knowledge of the other three cases. Id. Powell stated that he hoped that the prosecutor would keep the global plea offer open. Id. at 2-3 (ECF No. 9-26 at 3-4). The prosecutor stated that she had not yet made a decision, and that she would speak with Romney. Id. at 3 (ECF No. 9-26 at 4).

This first attempt at a plea agreement failed. The state district court sentenced Cooper in Case No. C278067 on August 13, 2013. In accordance with the stipulation for Cooper failing to stay out of trouble or failing to appear at sentencing, the state district court adjudicated Cooper as a "small" habitual criminal and sentenced him to prison for a minimum term of 8 years and a maximum term of 20 years. Ex. 27 (ECF No. 9-27). A later amended judgment adjusted the credits for time served. Ex. 33 (ECF No. 9-33).

On November 4, 2013, Cooper and the prosecution came to a global plea agreement for the three remaining cases, Case Nos. C281169, C281312, and C281170. Ex. 31 (ECF No. 9-31). In Case No. C281170, Cooper agreed to plead guilty to one count of possession of a stolen vehicle and one count of failure to stop on the signal of the police officer. Cooper stipulated to treatment as a "large" habitual criminal and to be sentenced to life imprisonment with parole eligibility starting after a minimum of 10 years. Ex. 31 at 1; see also Nev. Rev. Stat. § 207.010(1)(b). The prosecution had no opposition to Cooper serving all the sentences across all three cases concurrently and concurrently with the sentence in C278067. Ex 31 at 1-2 (ECF No. 9-32 at 2-3). Cooper tried unsuccessfully to withdraw his plea. The trial court convicted and sentenced Cooper. Ex. 42 (ECF No. 10-2).

Cooper appealed. Ultimately, after a remand for reconsideration of the plea-withdrawal motion, the Nevada Court of Appeals affirmed. Ex. 91 (ECF No. 11-6).

3

Cooper then filed a post-conviction habeas corpus petition in the state district court. Ex. 98 (ECF No. 11-13). The state district court appointed Waleed Zaman to represent Cooper. Cooper then filed a counseled supplement. Ex. 105 (ECF No. 11-20).

At the same time, Cooper was pursuing post-conviction relief in Case No. C281312. The two cases were in different departments, with different judges presiding. Cooper claimed in that case that Romney provided ineffective assistance for failing to communicate with him about the first global plea offer. The state district court initially denied the petition because Romney did not represent Cooper in Case No. C281312, and Cooper would need to raise his claim in one of the cases in which Romney represented Cooper. See Cooper v. State, 405 P.3d 103 (table disposition), 2017 WL 5499245 (Nev. Nov. 15, 2017). The Nevada Supreme Court noted that challenging Romney's performance in another case would not adequately protect Cooper's right to effective assistance of counsel, because acceptance of the first global plea offer would have resulted in the dismissal of Case No. C281312. Id. The Nevada Supreme Court thus reversed the denial and remanded the case back to the state district court. Id.

The state district court held an evidentiary hearing in Case No. C281312. The judge in Case No. C281170 had stated a preference to review the evidentiary hearing in Case No. C281312, instead of holding a largely identical second hearing. The judge in Case No. C281312 thus allowed Zaman to ask questions in the hearing. Ex. 108 (ECF No. 11-23). The state district court denied the petition in Case No. C281312. Ex. 109 (ECF No. 11-24). Cooper appealed, and the Nevada Supreme Court affirmed. Ex. 128 (ECF No. 11-43).

After reviewing the transcript and considering the argument of the parties, the state district court in Case No. C281170 denied the petition. Ex. 112 (ECF No. 11-27). Cooper appealed. He filed an opening brief and a reply brief. Exs. 123, 127 (ECF Nos. 11-38, 11-42). The Nevada Supreme Court affirmed. Ex. 129 (ECF No. 11-44).

Cooper then commenced this action. The petition originally contained three grounds for relief. ECF No. 6. Respondents moved to dismiss grounds 1 and 3 as unexhausted. ECF No. 8. The court granted the motion. ECF No. 17. Cooper elected to dismiss the unexhausted grounds, and the court dismissed them. ECF No. 20, 21.

## III. Legal Standards

### A. Deferential Standard of Review

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 562 U.S. at 100. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those

5

    arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 562 U.S. at 102.

    As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 103.

### B.    Ineffective Assistance of Counsel

"[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

    Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

    Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is,

the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

The Sixth Amendment does not guarantee effective counsel per se, but rather a fair proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v. Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Richter, 562 U.S. at 105 (citations omitted).

**IV.   Discussion**

In ground 2, the remaining claim for relief, Cooper alleges that Romney provided ineffective assistance regarding the first, failed global plea offer. He alleges that Romney failed to meet with him in person at the jail to discuss his felony cases and the proposed agreement. Cooper further alleges that but for Romney's failure to visit him in prison, he was unable to enter into negotiations, despite his intentions to do so, after a reasonable period of time for Cooper himself to review the discovery. As a result, Cooper alleges, he agreed to a less favorable plea with a life sentence. ECF No. 6 at 4-5.

**A.   Additional Background**

As noted above the state district court in Case No. C281312 held an evidentiary hearing on October 4, 2018. Powell testified first. He received the March 13, 2013 email from the

1    prosecution. Ex. 108 at 10 (ECF No. 11-23 at 11).  Powell went to the jail on March 20, 2013, to

2    speak with Cooper, and he was told that Cooper had refused to see him. Id. at 12 (ECF No. 11-23

3    at 13).  On or around that same day, Romney emailed Powell to say that she was having trouble

4    communicating with Cooper; she was unsure whether Cooper wanted to accept the offer.  Powell

5    responded that he had spoken with Cooper's family and told them that Cooper needed to accept

6    the global plea offer.  Id. at 15-16 (ECF No. 11-23 at 16-17).  Powell met with Cooper in person

7    on March 26, 2013.  Powell urged Cooper not to move to withdraw his plea.  Cooper had

8    concerns because he had not seen the evidence in the other three cases.  Powell felt it unethical to

9    advise Cooper to accept the global plea offer because Powell himself had not seen the evidence in

10   the other three cases.[3]  He encouraged Cooper to discuss that evidence with Romney and

11   Eichhorn.  Id. at 18-19 (ECF No. 11-23 at 19-20).  Powell looked upon Cooper's decision not to

12   move to withdraw the plea in C278067 as completion of the first step of the global plea offer.  He

13   felt that the attorneys in the other cases would need to help Cooper with the other steps.  Id. at 22

14   (ECF No. 11-23 at 23).

15        Romney testified next.  She and Cooper had a decent relationship.  Cooper was stubborn

16   in his beliefs how the cases should proceed.  In that sense, Romney admitted that the

17   conversations were difficult, but nothing extraordinary for a person facing significant felonies

18   with significant prison time.  Ex. 131 at 34-35 (ECF No. 11-23 at 35-36).  Romney testified later

19   that Cooper wanted sentences identical to what he would receive in C278067, 8 to 20 years

20   running concurrently.  Id. at 45-46 (ECF No. 11-23 at 46-47).  Romney also testified that to the

21   charge of robbery with the use of a deadly weapon, Cooper insisted that he was merely present.

22   Id. at 46 (ECF No. 11-23 at 47).

23        Like Powell, Romney received the prosecutor's email of March 13, 2013, with the global

24   plea offer.  Ex. 131 at 33 (ECF No. 11-23 at 34).  Romney did not recall the March 20, 2013

25   email exchange with Powell.  Id. at 34 (ECF No. 11-23 at 35).  Regarding the second and third

---

[3] Powell had reasons specific to C278067, unrelated to the global plea offer, to urge Cooper not to move to withdraw his plea.  First, the plea agreement in C278067 required dismissal of other criminal cases, which the prosecution could re-file if the plea agreement was withdrawn.  Second, Cooper was eligible for treatment as a "large" habitual criminal, and thus he would have faced more prison time had he gone to trial. Ex. 131 at 28-29 (ECF No. 11-23 at 29-30).

8

steps of the global plea offer, which concerned her cases, she spoke with Cooper on March 18, 2013, and relayed the offer. Romney testified that the discussion would have involved the pros and cons of the global plea offer, and it would have involved explaining the charges to which Cooper would plead guilty and the facts or evidence that would have supported the charges. Id. at 38. Romney spoke with Cooper again on March 20, 2013. Cooper indicated to Romney that he was not prepared to accept the global plea offer, which Romney assumed that Cooper did not want to negotiate the case. Id. at 39-40 (ECF No. 11-23 at 40-41). Romney did not recall whether she spoke with Cooper in person or over the telephone. Id. at 38, 39 (ECF No. 11-23 at 39, 40). Romney communicated to the prosecution that Cooper did not want to negotiate his cases and would not accept the global plea offer. Id. at 42 (ECF No. 11-23 at 43). Romney agreed that the second global plea offer, which was accepted, was worse for Cooper, because it was a life sentence, not a definite 25-year sentence. Id. at 43 (ECF No. 11-23 at 44). Romney did not recall whether Cooper or Powell contacted her after the March 27, 2013, hearing in which Cooper decided not to move to withdraw his plea. Id. at 48-49 (ECF No. 11-23 at 49-50). As far as she knew, Cooper decided on March 20, 2013 not to accept the global plea offer, and nobody told her that on March 27, 2013, that Cooper had decided not to move to withdraw his plea in C278067. Id. at 49 (ECF No. 11-23 at 50).

Cooper testified last. His initial reaction to learning about the global plea offer was to try to negotiate the sentence down to 8 to 20 years, so that he would spend no more time in prison than what he already would in C278067. Ex. 131 at 58 (ECF No. 11-23 at 59). On March 26, 2013, Powell visited Cooper in jail. Powell told Cooper that he had spoken with Cooper's family, that Cooper needed to accept the offer because it was the best that he could receive, and that Cooper would be an idiot not to accept the offer. Id. at 59 (ECF No. 11-23 at 60). Cooper testified that he told Powell that he would accept the global plea offer. Cooper did not agree with the requirement that he not move to withdraw his plea in C278067, but he acceded after Powell explained to him that the global plea offer meant that he would spend only an additional 2 to 5 years in prison. Id. (ECF No. 11-23 at 60). Cooper testified that at the March 27, 2013 hearing, "I said I would be withdrawing my motion to withdraw my guilty plea, and I would be going

forward with the global negotiations." Id. at 60 (ECF No. 11-23 at 61). Cooper did not speak with Romney after the March 18 and March 20, 2013 conversations, until November 3 or 4, 2013. Id. at 62-63 (ECF No. 11-23 at 63-64). In that November conversation, Cooper asked what had happened to the first global plea offer. Cooper testified that Romney told him that he had rejected the plea agreement back in March. Cooper then testified that he had performed step one, to which Romney said that she had spoken with the prosecution, and the prosecution was not budging. Id. at 64 (ECF No. 11-23 at 65).

Cooper did not dispute that Romney had called him on March 18, 2013, and extended to him the global plea offer. Ex. 131 at 70-71 (ECF No. 11-23 at 71-72).

### B. The Nevada Supreme Court's Decision

On the issue now in ground 2, the Nevada Supreme Court held:

> Cooper argues that counsel should have discussed the State's global offer to plead to several pending cases more thoroughly and timely relayed his desire to accept it to the State. The district court found that counsel conveyed the plea offer to Cooper, advised him about it, and provided him with time to consider it. The district court also found that Cooper did not indicate an intent to agree to the global plea offer before it expired. These findings are supported by substantial evidence and not clearly wrong. Accordingly, Cooper has not shown deficient performance. See Missouri v. Frye, 566 U.S. 134, 145 (2012). Specifically, Cooper had several pending cases, and the State made a global plea offer, stipulating to argue for concurrent sentences of 10 to 25 years in each case. The State informed defense counsel of this offer on March 13, 2013, and provided that the offer would expire on March 25. Defense counsel in this case, Claudia Romney, testified that she discussed the offer with Cooper on March 18 and March 20 and that Cooper declined to accept the State's terms. Attorney Jonathan Powell, who represented Cooper in a different case, testified that he first discussed the global plea offer with Cooper on March 13 and that Cooper was not prepared to accept the plea offer as of discussions they had on March 25 and March 26. Part of the plea offer required Cooper to abandon his motion to withdraw an earlier guilty plea in Powell's case. At a hearing on March 27 where Cooper agreed to abandon his motion to withdraw his earlier guilty plea, Powell acknowledged the deadline on the global offer, but relayed that Cooper was not yet prepared to accept the global offer and asked the State to extend the deadline. The State did not commit to extending the deadline. Cooper did not express an intent to agree to a global plea offer in this case until the morning of trial eight months later. Cooper's argument that he accepted the global plea offer by performance in abandoning his motion to withdraw the earlier guilty plea fails because Powell expressly noted that Cooper had not decided to accept the global plea offer when he informed the court that Cooper abandoned the other motion. The district court therefore did not err in denying this claim.

Ex. 129 at 2-3.

### C. Ground 2 Is Without Merit

The court first addresses two items of Cooper's testimony that cannot be true. First, Cooper testified that he told Powell on March 26, 2013, that he would accept the global plea offer. This contradicts Powell's testimony that at that meeting Cooper was not yet prepared to accept the global plea offer. Additionally, Powell stated at the March 27, 2013, that Cooper was not yet prepared to accept the global plea offer, but Powell hoped that the prosecution would keep the global plea offer open longer. Ex. 26 at 2 (ECF No. 9-26 at 3). If Cooper indeed had told Powell the opposite at their meeting the previous day, then he would have spoken up at the hearing. He did that at other hearings when he thought matters were not going his way. See Ex. 24 (ECF No. 9-24). Second, Cooper testified that at the March 27, 2013 hearing he said that he was accepting the global plea offer. No such statement appears in the transcript. See Ex. 26 (ECF No. 9-26).

Cooper alleges that he needed more time to review the discovery in the cases against him. ECF No. 6 at 5. Romney testified that she explained to Cooper the evidence against him when she spoke with him on March 18 and March 20, 2013. Ex. 131 at 38 (ECF No. 11-23 at 39). Cooper might have wanted more time to review the discovery, but that was time that Romney could not give him. The prosecution set the expiration date for the global plea offer at 9:30 a.m., March 25, 2013, and later extended the deadline to 5:00 p.m., March 26, 2013. On March 27, 2013, Cooper still was not yet prepared to accept the global plea offer. His decision at the same hearing to not move to withdraw his plea in C278067 had no effect upon the global plea offer. First, by its terms the plea offer already had expired. Second, Cooper only took one step towards accepting the plea agreement, and he was not yet prepared to accept the rest of the steps. By March 27, 2013, only the prosecution had the ability to extend the global plea offer. Powell asked for yet more time on the offer, but the prosecution did not grant it. Romney had no ability to extend the expiration date for Cooper to review the discovery himself.

Finally, Cooper has an allegation in ground 2 that is exceedingly exact. He does not allege that Romney failed to communicate the plea offer to him. He alleges that Romney failed to communicate the plea offer to him in person. Frye held that, "as a general rule, defense counsel

11

has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." 566 U.S. at 145. Frye says nothing about the form that communication may take. Romney communicated the plea offer to Cooper, which Cooper himself acknowledged. Ex. 131 at 70-71 (ECF No. 11-23 at 71-72). The Nevada Supreme Court reasonably concluded under Frye that Romney did not perform deficiently. Ground 1 is without merit.

Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability.

## V.   Conclusion

IT THEREFORE IS ORDERED that the petition for a writ of habeas corpus (ECF No. 6) is **DENIED**. The clerk of the court is directed to enter judgment accordingly and to close this action.

IT FURTHER IS ORDERED that a certificate of appealability will not issue.

DATED: April 26, 2022.

_____
LARRY R. HICKS
United States District Judge